# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**POPULAR, INC.,**

        **Plaintiff,**

**-vs-**                                            **Case No.  6:06-cv-1218-Orl-18JGG**

**BRIAN STOUT,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST BRIAN STOUT BY POPULAR, INC.. (Doc. No. 11)** |
| **FILED:** | November 7, 2006 |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. |

## I. BACKGROUND

Plaintiff, Popular, Inc., is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. Complaint, ¶ 4. Popular, Inc., through its subsidiaries, operates over 300 banking branches in Puerto Rico, Florida, Texas, New York, New Jersey, Illinois, and California. Complaint, ¶ 6. Popular first used its "Banco Popular" mark in 1893 and continues to use this mark in interstate commerce. Complaint ¶ 7.[1] Popular, Inc. claims ownership of the "Banco Popular" mark,

---

[1] Exhibit A to the complaint shows that the "Banco Popular" mark was registered on December 13, 1994. Docket 1 at 8.

as well as other marks in the Popular family, including "Popular," "Popular.com," "BPPR Popular Mortgage," "Banco Popular Mortgage," "Popular Money," "Popular Savings," "Popular Investor", and "Popular Interest". *Id*.

Popular Financial Services, LLC is a division of Equity One, Inc., a subsidiary of Popular, Inc. Complaint, ¶ 9. Popular Financial Services hired defendant Brian Stout as an employee on January 4, 2005. Complaint, ¶ 9. The very next day, on January 5, 2005, Stout registered the domain name "popularfinancialsvc.com." Complaint, ¶10, Exh. B. The registration shows Stout as the named organization, his home address as the organization's address, and "brianallenstout@yahoo.com" as a contact e-mail address. Complaint, ¶ 5, Exh. B.

Stout's employment with Popular Financial was terminated on April 15, 2005. Complaint, ¶ 12. More than one year later, on July 20, 2006, Stout offered to sell the domain name to Popular, Inc. Complaint, ¶¶ 13. Popular, Inc. claims Stout's registration and use of the domain name was unauthorized, and that he intentionally copied the distinctiveness of the mark with a bad faith intent to profit from it. Complaint, ¶¶ 14, 15.

Popular, Inc. sued Stout and alleged that his registration and use of the domain name violates the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Stout was personally served with the complaint on September 5, 2006. Docket 7. The clerk entered a default against Stout on September 29, 2006. Docket No. 8. Popular, Inc. now moves for default judgment, seeking (1) an order directing the registrar to transfer the domain name "popularfinancialsvc.com" to Popular, Inc. and (2) statutory damages in the amount of $10,000.

## II. THE LAW

### A. Default Judgment

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55 (a). Rule 55 (b)(2) further provides:

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Construction v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corporation,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997), *citing Nishimatsu*, 515 F.2d at 1206. A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987), *citing Nishimatsu*, 515 F.2d at 1206.

B. **The Anti-Cybersquatting Consumer Protection Act**

The ACPA was enacted in 1999 in response to concerns over the proliferation of cybersquatting – the Internet version of a "land grab." Cybersquatting is the practice of registering "well-known brand names as Internet domain names" in order to force the rightful owners of the marks "to pay for the right to engage in electronic commerce under their own brand name." S. Rep. No. 106-140, at 5 (1999). Cybersquatting is profitable because while it is inexpensive for a cybersquatter to register the mark of an established company as a domain name, such companies are often vulnerable to being forced into paying substantial sums to get retrieve their own names for use on the world wide web. *See, Sporty's Farm, L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir.2000).

To prevail under the ACPA, a plaintiff must prove that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 2006 WL 2847233 *3 (11th Cir. October 2, 2006); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001). The ACPA sets forth a nonexclusive list of nine factors to be considered by the court to determine whether a bad faith intent exists. 15 U.S.C. § 1125(d)(1)(B)(i).[2] The ACPA contains a safe harbor for those whom the court determines

---

[2] The nine factors are:
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

had "reasonable grounds" to believe that the use of the domain name was a "fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

The ACPA empowers the Court to order the forfeiture or cancellation of the domain name or transfer the domain name to the owner of the mark. 15 U.S.C. § 1125(c). The plaintiff also may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the court considers just. 15 U.S.C. § 1117(d). The prevailing party is entitled to reasonable attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a).

III. **ANALYSIS**

  A. **Sufficiency of the Complaint**

As set forth above, Plaintiff must establish three elements to state a claim pursuant to the ACPA. The first element is that the mark[3] is distinctive or famous. Plaintiff alleges that the "Popular" name is distinctive in the field of financial products and services. Complaint ¶¶ 8, 15. Plaintiff has registered several marks using the "Popular" designation, including "Popular Money," "Popular Savings," "Popular Interest," "Popular Checking," "Popular E-Check," and "Popular Check Protect."

---

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section. 15 U.S.C. § 1125(d)(1)(B)(i).

[3] The ACPA does not require that the mark be registered. See 15 U.S.C. § 1125(d)(1)(A) ("A person shall be liable in a civil action by the owner of a mark. . . .").

Complaint, Exh. A. Plaintiff also has registered the mark "Popular." *Id*. Plaintiff has not registered the mark "Popular Financial Services." Plaintiff, however, argues that use of the name "Popular" is distinctive.

There are four categories of distinctiveness in classifying a mark: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1356 (S.D. Fla. 1998). A descriptive term is not automatically protectable, but it may achieve that status once it acquires a secondary meaning. *Id*. The Court finds that the mark "Popular" is a descriptive mark. *See, id.* at 1357 ("Popular Bank of Florida" is a descriptive mark).

A secondary meaning is the connection in the consumer's mind between the mark and the provider of the product or service. *Id*. Plaintiff alleges the mark "Popular" when used in conjunction with the sale, distribution, or offer for sale of financial products and services signifies to the consumer that the product or service comes from Popular, Inc. Complaint, ¶ 8. The Court finds that Plaintiff has sufficiently pleaded a secondary meaning of the "Popular" mark to satisfy the distinctiveness element.

The second element that Plaintiff must establish is that the defendant's domain name is identical or confusingly similar to the plaintiff's mark. Plaintiff alleges the domain name"popularfinancialsvc.com" is confusingly similar to Plaintiff's "Popular.com" mark and family of marks. Complaint, ¶ 18. The Court would be unpersuaded by likelihood of consumer confusion if only "Popular.com" were considered. When the family of marks are considered, which combine "popular" with a description of a financial service, Plaintiff's complaint sufficiently pleads a likelihood of consumer confusion with the challenged domain name.

As to the final element that the defendant registered or used the domain name with a bad faith intent to profit, the Complaint sets forth sufficient facts establishing bad faith. Stout did not register the domain name until after he began working for Popular Financial Services. There is no showing that Stout engaged in a bona fide commercial enterprise or any other facts that would suggest that Stout had a reasonable belief that his registration of the domain name was lawful. Further, Stout's offer to sell the domain name to Popular, Inc. satisfies the pleading requirement that Stout had a bad faith intent to profit from the registration of the domain name.

Plaintiff's complaint establishes all three of the required elements to state a claim under the ACPA. An entry of default judgment, therefore, is appropriate.

### B. **Remedies**

Popular, Inc. seeks (1) an order directing the registrar to transfer the domain name "popularfinancialsvc.com" to Popular, Inc. and (2) statutory damages in the amount of $10,000. As to Plaintiff's first request, the Court may transfer the domain name to Plaintiff or order the forfeiture or cancellation of the domain name. The Court chooses to order Stout's forfeiture of the domain name and to cancel Stout's registration. The Court declines to order the transfer of the domain name to Plaintiff on a default judgment when there has been at least one decision finding another company had priority of use of the mark "Popular Bank" in a market. *See, Popular Bank of Fla.*, 9 F. Supp. 2d at 1364 (Popular Bank of Florida established the priority and validity of its mark in the southern Florida market against Banco Popular).

Plaintiff argues the Court should award statutory damages in the amount of $10,000 because: (1) it falls toward the low end of available damages; (2) plaintiff is not requesting an additional award of attorney's fees and costs; and (3) to deter Stout and other similarly situated persons from engaging

in such conduct in the future. The Court has reviewed other damages awards under the ACPA as a means of comparison.

In *Shields v. Zuccarini*, 254 F.3d 476 (3d Cir. 2001), the court found that the district court did not abuse its discretion in awarding statutory damages of $10,000 per domain name. Zuccarini was a wholesaler of domain names, meaning he acquired multiple domain names with the intent of profiting from them. *Id*. at 479. He registered five domain names that were variations of the plaintiff's web site. *Id*. Visitors to Zuccarini's sites became trapped within the site, and were unable to exit without clicking on a succession of advertisements, for which advertisers paid Zuccarini 10-25 cents for every click. *Id*. at 480. After the plaintiff sent Zuccarini a "cease and desist" letter, Zuccarini altered his sites to a "political protest" page. *Id*. Zuccarini argued that he operated the websites for only a 60-day period following enactment of the ACPA and that the award, therefore, was punitive. *Id*. at 487. The Third Circuit found that nothing in the statute requires the court to consider the duration of the infringement, and that the district court properly exercised its discretion. *Id*.

Another example may be found in *E. & J. Gallo Winery v. Spider Webs Ltd*., 286 F.3d 270 (9th Cir. 2002), where the court awarded $25,000 in statutory damages. The defendant's business was to develop and register internet domain names. *Id* at 272. Of the more than 2000 names defendant had registered, approximately 300 of them contained names that could be associated with well-known businesses. *Id*. After the defendant refused to transfer to Gallo the domain name "ernestandjuliogallo.com," Gallo sued. *Id*. at 272-73. About six months after Gallo sued, the defendant published on the website the words "Whiney Winery," and discussed the law suit, the risks associated with alcohol use and alleged misrepresentations by corporations. *Id.* at 272.

In this case, it is not alleged that Stout was engaged in the business of registering numerous domain names for profit. Nor does Plaintiff allege any facts that Stout actually used the "popularfinancialsvc.com" domain name. Compared to the facts in the *Shields* and *Gallo* cases, Stout's conduct was less egregious. The Court agrees, however, that an award of statutory damages is appropriate for Stout's violation of the ACPA and to deter similar conduct in the future. Statutory damages in the amount of $10,000 appears appropriate for the conduct in this case.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Court grant Plaintiff's motion for default judgment;

2. The Court award statutory damages against Defendant in the amount of $10,000 pursuant to 25 U.S.C. § 1117(d);

3. The Court order the forfeiture and cancellation of Stout's registration of the domain name "popularfinancialsvc.com;" and

4. The Court direct the Clerk to enter a separate judgment in favor of Plaintiff, Popular, Inc. and against Defendant, Brian Stout, in the amount of $10,000 and forfeiture and cancellation of Stout's registration of the domain name "popularfinancialsvc.com."

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 12, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable G. Kendall Sharp
Counsel of Record
Unrepresented Party: Brian Stout, 10239 Cypress Knee Circle, Orlando, FL 32825